IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
EASTERN DIVISION

| | |
|---|---|
| Curt Meidinger, Peggy Meidinger, Tyler Meidinger, and Trevor Meidinger, <br><br> Plaintiffs, <br><br> vs. <br><br> Zoetis, Inc., <br><br> Defendant. | **ORDER** <br><br> Case No.: 3:21-cv-00097 |

Before the Court is Defendant Zoetis, Inc.'s ("Zoetis") motion to dismiss counts I and II of Plaintiffs' complaint filed on July 16, 2021. Doc. No. 14. On August 5, 2021, Plaintiffs Curt Meidinger, Peggy Meidinger, Tyler Meidinger, and Trevor Meidinger (together, "the Meidingers") filed a response in opposition. Doc. No. 20. Zoetis filed a reply on August 19, 2021. Doc. No. 21. For the reasons set forth below, the Court grants Zoetis's motion and dismisses counts I and II without prejudice.

I. **BACKGROUND**

The factual background, which the Court must accept as true for purposes of this motion, is taken from the Meidingers' complaint. Doc. No. 1. The Meidingers are cattle ranchers and are in the livestock business. Id. ¶ 5. This dispute arises from the Meidingers' use of a Zoetis growth-promoting implant in their cattle, the alleged effects, and how those alleged effects damaged the Meidingers' livestock business.

According to the Meidingers, their business of over 35 years has an "industry-topping reputation" for "performance and quality." Id. ¶¶ 5, 7. As part of their business, the Meidingers

have annually run between 12,000 and 14,000 yearlings and stockers cattle.[1] Id. ¶ 5. In their cattle, the Meidingers "routinely" use growth promoting implants. Id. ¶ 8. Zoetis is a corporation that, among other things, developed a growth promoting implant at the center of this case – the Synovex One Grass implant ("Synovex"). See id. ¶¶ 4, 9. More specifically, Synovex is a "growth promoting implant that is designed to increase rate of weight gain for up to 200 days in pasture and feedlot steers and heifers." Id. ¶ 10.

As alleged, in summer of 2018, Zoetis representative Ethan Johnson approached Curt Meidinger about Synovex.[2] Id. ¶ 9. Johnson allegedly explained that Synovex "promised increased performance in gain for yearling steers and heifers, greater marketing flexibility, reduced production costs, and an excellent return on investment." Id. ¶ 11. Based on these representations and "the product literature," the Meidingers purchased approximately 13,800 Synovex implants. Id.

When using Synovex, the Meidingers allege that they followed the protocol "prescribed by Johnson." Id. ¶ 13. To that end, 7,700 head of the Meidingers' cattle received their first round of Synovex (the "Implanted Cattle") in fall of 2018. Id. ¶ 13. Consistent with their operations, the Implanted Cattle were later placed in pastures for summer grazing. Id. The Implanted Cattle received a second round of Synovex in spring of 2019. Id. ¶ 14.

As summer of 2019 progressed, the Meidingers allege that the Implanted Cattle began exhibiting "buller behavior." Id. Buller behavior occurs when a "rider" repeatedly mounts and rides its pen mate, the "buller," until it is injured or killed. Id. Several calves were killed by

---

[1] Yearlings are cattle between one and two years of age. Stockers are calves that have been weaned and are intended for sale as commercial feeders but have not yet been placed in a feedlot.

[2] Although the Meidingers had used Zoetis-brand vaccines for years, prior to 2018 they had never used Synovex. Doc. No. 1, ¶ 8.

Implanted Cattle exhibiting buller behavior, according to the Meidingers. Id. They further allege that the Implanted Cattle also displayed unwanted "staggy" characteristics, or the appearance of mature male cattle, including a thicker neck, heavier muscles, and leaner appearance. Id. The staggy characteristics became more apparent in comparison to other cattle of the same age and quality as the Implanted Cattle were gathered for marketing. Id. ¶ 15. To that end, potential buyers were leery to purchase the Implanted Cattle because, according to the Meidingers, the side effects of Synovex caused the Implanted Cattle to appear mismanaged. Id. As such, the Meidingers assert that they sold their yearlings at a noticeably decreased price. Id. ¶ 16.

According to the complaint, the Meidingers' long-time customers, Brian and Paul Gader (the "Gaders"), purchased four hundred of the Implanted Cattle in May 2019. Id. ¶¶ 18, 19. By the end of September 2019, the four hundred Implanted Cattle allegedly exhibited distinct bully and staggy features. Id. ¶ 19. To that end, Paul Gader explained to both Curt Meidinger and Johnson that he was able to differentiate the four hundred Implanted Cattle from the other two hundred steers in the same pasture. Id. Curt Meidinger then spoke to Johnson and a veterinarian employed by Zoetis. Id. ¶ 24. The veterinarian confirmed that the Meidingers were "not the only people having issues with [Synovex]." Id. Generally, Meidingers assert that they sustained damages including the injuries and deaths of calves, damage to their reputation, and "staggering" economic loss. Id. ¶¶ 14, 16, 23.

In their complaint, the Meidingers raise four claims: (I) negligence, (II) strict liability, (III) breach of express warranty, and (IV) breach of implied warranties. Doc. 1, pp. 5-9. In its motion, Zoetis moves to dismiss the negligence claim (count I) and strict liability claim (count II). Doc. 15, pp. 1-2. Zoetis argues that the Meidingers failed to plausibly plead their tort claims under Federal Rule of Civil Procedure 12(b)(6). Doc. No. 15, p. 9. Alternatively, Zoetis argues that the

damages the Meidingers seek for their tort claims are barred by North Dakota's economic loss doctrine. Doc. No. 15, p. 4.

## II. LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal if a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint is facially plausible where its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. A plaintiff must plead facts that show more than mere speculation or possibility that a defendant acted unlawfully. Wilson v. Ark. Dep't of Hum. Servs., 850 F.3d 368, 371 (8th Cir. 2017) (citing Iqbal, 556 U.S. at 678).

While obligated to accept a complaint's factual allegations as true, courts are not required to accept a plaintiff's legal conclusions or a "formulaic recitation of the elements of a cause of action." In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d 1059, 1063 (8th Cir. 2017) (quoting Iqbal, 556 U.S. at 678). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. Whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Alleruzo v. SuperValu, Inc. (In re SuperValu, Inc.), 925 F.3d 955, 962 (8th Cir. 2019) (citation omitted). This action is based on diversity jurisdiction. Therefore, the Court will apply North Dakota substantive law. See DJ Coleman, Inc. v. Nufarm Americas, Inc., 693 F. Supp. 2d 1055, 1059 (D.N.D. 2010).

### III. DISCUSSION

The Court turns first to Zoetis's argument that, under Federal Rule of Civil Procedure 12(b)(6), the Meidingers failed to sufficiently plead their negligence claim (count I) and strict liability claim (count II). The Court will then briefly address Zoetis's argument regarding whether North Dakota's economic loss doctrine bars the Meidingers' recovery on these same claims.

#### A.   Failure to State a Claim

Before assessing the sufficiency of Meidingers' tort claims, a brief review of the difference between negligence and strict liability under North Dakota law is necessary. The "North Dakota Supreme Court has 'recognized that negligence and strict liability in tort are separate and distinct theories of products liability and that each theory has a different focus.'"[3] Burgad v. Jack L. Marcus, Inc., 345 F. Supp. 2d 1036, 1038 (D.N.D. 2004) (quoting Oanes v. Westgo, Inc., 476 N.W.2d 248, 253 (N.D. 1991)). "Strict liability focuses on whether a product is defective and unreasonably dangerous, whereas negligence focuses on whether the manufacturer's conduct falls below the standard of reasonable care." Id. (citing Crowston v. Goodyear Tire & Rubber Co., 521 N.W.2d 401, 406 (N.D.1994)). "The essential difference between negligence and strict liability is that in negligence the foreseeability of harm by the manufacturer or seller is a question of fact for the jury while in strict liability knowledge of the product's propensity to inflict harm is assumed regardless of whether the danger was foreseeable by the manufacturer or seller." Oanes v. Westgo, Inc., 476 N.W.2d 248, 253 (N.D. 1991) (internal citations omitted).

---

[3] Under North Dakota law, "product liability action" is "any action brought against a manufacturer or seller of a product, regardless of the substantive legal theory or theories upon which the action is brought, for or on account of personal injury, death, or property damage caused by or resulting from the manufacture, construction, design, formula, installation, preparation, assembly, testing, packaging, labeling, or sale of any product, or the failure to warn or protect against a danger or hazard in the use, misuse, or unintended use of any product, or the failure to provide proper instructions for the use of any product." N.D. Cent. Code § 28-01.3-01.

5

Here, Zoetis argues the Meidingers' complaint "fail[ed] to adequately allege the defect with [Synovex] in support of their tort claims." Doc. No. 15, p. 10. For their negligence claim, while not clearly differentiated, the Meidingers appear to primarily assert two potential theories: (1) negligent design and (2) negligent manufacturing. See Doc. No. 1, ¶¶ 25-31. Similarly, for their strict liability claim, the Meidingers appear to generally assert two possible theories: (1) design defect and (2) design manufacturing defect. See Doc. No. 1, ¶¶ 32-29.

### 1. Negligent Design/Manufacturing and Strict Liability Design/Manufacturing Defect

Under negligent design/manufacture theories, as well as strict liability design defect/manufacturing defect theories, the Meidingers must plausibly allege that Synovex was defective, among other things.[4] See Burgad, 345 F. Supp. 2d at 1038 ("In a negligent design claim, the manufacturer or seller is not liable absent proof that the product is defective." (citing Oanes, 476 N.W.2d at 253)); U.S. Rubber Co. v. Bauer, 319 F.2d 463, 466 (8th Cir. 1963) (in applying North Dakota law in an appeal from a jury verdict the Eighth Circuit explained that "[i]n the absence of proof of the existence of a defect a defendant may not be held liable for negligence in

---

[4] While each of these theories requires a plausibly alleged defect, the elements of strict liability design manufacturing defect differ from those of negligent design/manufacturing theories. Specifically, "Under North Dakota law, for a prima facie product liability claim, the plaintiff must show: (1) the product was defective in design or manufacture; (2) the defect rendered the product unreasonably dangerous to the consumer; (3) the defect existed when the product left the manufacturer; and (4) the defect was a proximate cause of the plaintiff's injuries." Moss v. ProCom Heating, Inc., No. 1:18-CV-106, 2020 WL 6036320, at *8 (D.N.D. July 8, 2020) (citing Burgad v. Jack L. Marcus, Inc., 345 F. Supp. 2d 1036, 1041 (D.N.D. 2004)).

On the other hand, under North Dakota law, "the general elements of a/any negligence claim are "(1) duty; (2) breach of that duty; (3) causation and (4) damages." Barbie v. Minko Const., Inc., 2009 ND 99, ¶ 8, 766 N.W.2d 458. However, "one element of a negligent design claim is that the product is defective or unsafe. The plaintiff must prove that the defendant failed to use reasonable care in designing the product and that failure resulted in a defective product." Burgad, 345 F. Supp. 2d at 1038–39.

6

manufacture."); Moss v. ProCom Heating, Inc., No. 1:18-CV-106, 2020 WL 6036320, at *8 (D.N.D. July 8, 2020) ("Liability based on strict product liability theory 'cannot attach unless there is proof of a defect.'" (quoting Herman v. Gen Irrigation Co., 247 N.W.2d 472, 476 (N.D. 1976))). The Meidingers, however, failed to sufficiently allege a plausible defect with Synovex.

Meidingers generally assert there is a "defect" with Synovex as part of their recitation of the elements of the negligence and strict liability claims in their complaint. In fact, and importantly, the word "defectively" appears for the first time on the fifth page of the Meidingers' complaint when alleging the elements of their negligence claim. Doc. No. 1, p. 5. Absent from these general legal assertions, however, are factual allegations in the preceding pages of the complaint that allege a design and/or manufacturing defect with Synovex. See In re Pre-Filled Propane Tank Antitrust Litig., 860 F.3d at 1063 (quoting Iqbal, 556 U.S. at 678) (A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Simply stating that Synovex was "defective" within reciting the elements of a negligence claim, without any additional factual allegations, is a legal conclusion, which the Court need not accept as true. See id.

The Meidingers argue they have "specifically alleged how the [Synovex] implant deviated from the intended result and deviated from other implants: instead of the Implanted Cattle gaining more weight with less intervention, the Implanted Cattle developed staggy characteristics and engaged in buller behavior resulting in physical injury and death to other cattle."[5] (emphasis

---

[5] The Meidingers further assert that they "do not need to prove the root defect that caused these side effects at the pleading stage." Doc. No. 20, p. 4 (emphasis in original). The Court certainly agrees. However, the Meidingers still need to plead factual allegations that there was a defect with Synovex, not simply that Synovex did not perform precisely as expected. See Wilson v. Ark. Dep't of Hum. Servs., 850 F.3d 368, 371 (8th Cir. 2017) (A plaintiff must plead facts that show more than mere speculation or possibility that a defendant acted unlawfully. (citing Iqbal, 556 U.S. at 678)).

7

added). Doc. No. 20, p. 4. The Court is not persuaded that allegations of a deviation from an anticipated result plausibly alleges a defect on the facts in this complaint.

Even accepting the factual allegations in the complaint as true and drawing all reasonable inferences in the Meidingers' favor, the unexpected "result," "deviation," or side effects of buller behavior and staggy characteristics are not sufficient, without more, to plausibly plead a design or manufacturing defect with Synovex. To the contrary, the alleged deviations, including "thicker neck, heavier muscled[,]" are entirely consistent with what Synovex purports to be – that is, "a growth promoting implant that is designed to increase rate of weight gain for up to 200 days." See Doc. No. 1, ¶ 10. These allegations, even when considered with other factual allegations in the complaint, at most allow the Court to reasonably infer the side effects were simply a result of Synovex. The Court cannot reasonably infer that these side effects were a result of a defect with Synovex. See Doc. No. 1, ¶¶ 20-22. See Paulsen v. Abbott Lab'ys, 368 F. Supp. 3d 1152, 1174 (N.D. Ill. 2019) (explaining in the context of a motion to dismiss that "simply alleging the harm that resulted from the use of drug is not sufficient to establish a design or manufacturing defect under Georgia law."). Accordingly, without more factual allegations directly asserting an alleged defect with Synovex, the Meidingers have only pleaded facts that ask the Court to speculate there was a defect. See Wilson v. Ark. Dep't of Hum. Servs., 850 F.3d 368, 371 (8th Cir. 2017) (citing Iqbal, 556 U.S. at 678) ("A plaintiff must plead facts that show more than mere speculation or possibility that a defendant acted unlawfully.").

A plausible negligence claim under design/manufacture theories, as well as a plausible strict liability claim under design defect/manufacturing defect theories, requires sufficiently pleading a defect. Here, the Meidingers have failed to plausibly plead a defect. Accordingly, the Court finds that the Meidingers have failed to plausibly plead their negligence claim (count I) and

strict liability claim (count II) and grants Zoetis's motion to dismiss those claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

### B. Economic Loss Doctrine

Because the Meidingers did not plausibly plead their negligence and strict liability claims, the Court need not decide whether recovery on the tort claims is barred by the economic loss doctrine under North Dakota law. However, while the Court reaches no decision on this issue in this order, the Court generally agrees with Zoetis that this Court remains bound by Dakota Gasification Company v. Pascoe Building Systems, 91 F.3d 1094 (8th Cir. 1996) and Arena Holdings Charitable, LLC v. Harman Professional, Inc., 785 F.3d 292 (8th Cir. 2015), in the absence of any subsequent state court decision or statutory amendment. See Pfingsten v. Southern Wisc. Auto & Tire, LLC, 2017 WL 4171380, No. 3:16-cv-316 (D.N.D. Sept. 19, 2017). "[T]hese courts have adopted an expansive approach and have predicted that the North Dakota Supreme Court would bar recovery for physical damage to 'other property' where the 'damage was a foreseeable result of a defect at the time the parties contract.'" Id. (internal citations omitted).

Under the foreseeability test, it seems likely that the majority of damages alleged by the Meidingers, including cost to purchase Synovex, reduced sale price at auction, and damage to reputation, were certainly foreseeable at the time the parties contracted to purchase Synovex and would presumably be barred by the economic loss doctrine. The damages alleged for the losses associated with the deaths of other cattle that were ridden to death by the buller cattle are arguably more attenuated. Again, while the Court emphasizes that it reaches no decision on this issue, the Court notes it would be bound by prior Eighth Circuit Court of Appeals decisions at this time, absent authority to the contrary.

## IV.     CONCLUSION

The Court has carefully reviewed the entire record, the parties' filings, and the relevant law. For the reasons set forth above, Zoetis's partial motion to dismiss (Doc. No. 14) is **GRANTED** and the Meidingers' negligence claim (count I) and strict liability claim (count II) are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

Dated this 2nd day of March, 2022.

*/s/ Peter D. Welte*
Peter D. Welte, Chief Judge
United States District Court